UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA BOYD, et al., | ) | CASE NO. 3:16-CV-00009 |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| | ) | JUDGE THOMAS M. ROSE |
| v. | ) | |
| | ) | |
| THE KINGDOM TRUST COMPANY, et al., | ) | **REPLY IN SUPPORT OF DEFENDANT THE KINGDOM TRUST COMPANY'S MOTION TO DISMISS** |
| | ) | |
| *Defendants*. | ) | |

I. **INTRODUCTION**

It is plain from the face of Plaintiffs' Complaint and their Opposition Brief that Kingdom Trust did nothing more than *purchase*—at Plaintiff Boyd's behest—an alleged security (the "Apostelos Note"). Boyd, in her Opposition to Kingdom Trust's Motion to Dismiss, does not even suggest how or why such an action could conceivably constitute participating in or aiding a *seller* in the sale of a security. Boyd essentially asks this Court to create strict liability under R.C. § 1707.43 that extends to any party that had even minimal involvement in not only the sale of an unregistered security, but also in the purchase of the security. That is not what the statute, or the case law interpreting it, states.

Under her misguided interpretation of the Ohio Securities Act, Boyd would have this Court believe that an investor can choose her own investment, but assume no risk for that investment. Under Boyd's reading of the principles of "liberal construction," an investor would be allowed to force any innocent party to pay for the money she lost in the investment. Under

such an illogical interpretation of the Ohio Securities Act, trust custodians for self-directed IRAs would suddenly become insurers rather than custodians.

That is essentially what Boyd asks this Court to do: impose liability on Kingdom Trust merely for opening an account for Boyd at her own request, and then following her directions in purchasing an alleged security that she alone chose and for which she alone had the responsibility of determining its legality. As explained in Kingdom Trust's opening brief and below, however, Section 1707.43 of the Ohio Securities Act does not work that way. Therefore, Boyd—who lacks standing to even bring a claim under the statute—clearly has no claim against Kingdom Trust.

## II. ARGUMENT

### A. Boyd Provides No Support for Her Argument That Standing Is Not Limited to the Actual Purchaser of the Security

The title of Section 1707.43 of the Ohio Revised Code is "Remedies of *Purchaser* in Unlawful Sale." The statute itself states that "every sale … made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the *purchaser*." O.R.C. § 1707.43(A) (emphasis added). Boyd does not attempt to argue that she was the purchaser of the security. In fact, throughout the Complaint and her Opposition, she repeatedly refers to Kingdom Trust as the purchaser:

- As for the investments themselves, "Apostelos would either have the Plaintiffs request the ***Defendants purchase*** Unregistered Securities using IRA assets or Apostelos would have the Plaintiffs execute powers of attorney giving him … the ability ***to request the Defendants purchase*** Unregistered Securities." (Compl. ¶ 48);

2

- "***Kingdom Trust***, on behalf of Ms. Boyd's IRA account, ***purchased*** an Unregistered Security." (Compl. ¶ 56);

- "The transactions by which Defendants [***Kingdom Trust*** and Pensco] ***purchased*** one or more of the Unregistered Securities…. (Compl. ¶ 74);

- "Indeed, the ***purchases*** of Unregistered Securities ***by Kingdom Trust***…." (Compl. ¶ 80);

- "On June 13, 2014, on behalf of Ms. Boyd's IRA account, ***Kingdom Trust purchased*** illegal securities from Apostelos." (Opp. at 2);

- "Once all of the prerequisites dictated by Kingdom Trust were met for the sale of the illegal securities, ***Kingdom Trust funded the sale with cash from Ms. Boyd's account and thereafter took title, custody and possession of the illegal securities on Ms. Boyd's behalf***." (*Id.*);

- "Kingdom Trust agreed to provide services to ***investors in Ohio, including Ms. Boyd, who would purchase securities from Apostelos with the aid and participation of Kingdom Trust***." (Opp at 9);

- "***Kingdom Trust took title, custody and possession of all of the assets in Ms. Boyd's accounts.***" (*Id.*);

- "Kingdom Trust required Apostelos to execute a Promissory Note Investment Representation letter and Private Debt

3

Servicing Agent Agreement *before purchasing the illegal securities for Ms. Boyd*." (*Id.*).

Plaintiffs' continuous references to Kingdom Trust as the purchaser of the Apostelos Note clearly establish that even Boyd recognizes Kingdom Trust's role in this transaction, and confirms that she does not have standing under R.C. § 1707.43 as the *purchaser*.

The statutory language, as well as established Ohio case law, confirm that standing for a Section 1707.43 claim is limited to purchasers of securities. Rather than citing any law to rebut this argument, Boyd attempts to distinguish the cases Kingdom Trust cited, in particular arguing that she should have standing because her beneficiary interests are adverse to Kingdom Trust's interests. The logical extension of Boyd's argument would be that any beneficiary could become a "purchaser" merely by filing a lawsuit against her custodian. This is not the law. Even if the case law did support such a contrived proposition, however, Boyd has not pleaded any facts to support the conclusion that her beneficiary interests are adverse to Kingdom Trust's other than the bare fact that she filed this suit. Boyd has *created* an adverse *situation*—not an adverse *interest*—by suing Kingdom Trust. Boyd does not allege, for instance, that Kingdom Trust benefitted at Boyd's expense when it purchased the Apostelos Note on her behalf, that Kingdom Trust failed to follow her directions, or that it had any relationship with Apostelos.

For instance, *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 755 F.Supp. 2d 857 (S.D. Ohio, 2010), holds that the government-entity beneficiaries of certain trusts, for which the co-plaintiff State Treasurer acted as trustee, did not have standing to bring a Section 1707.43 claim stemming from investments made from those trusts. The court held that they lacked standing because the Treasurer, not they, purchased the securities at issue. The court's

4

observations that the Treasurer was also already bringing a claim under Section 1707.43 on behalf of the trusts, and that there was "no suggestion that the Treasurer's interests [were] adverse" to the beneficiaries' interests (*id.* at 866), do not change its holding that the beneficiaries were not the "purchasers" and therefore lacked standing. While Boyd argues this *dicta* distinguishes her situation from that of the beneficiaries in *Nat'l Century*, she is incorrect. Boyd's Opposition Brief further asserts that Kingdom Trust "collected fees from [her] related to the execution of the sale" (Opp. at 2.),[1] but that statement is not alleged anywhere in the Complaint. Moreover, logically Kingdom Trust has no interest in its accountholders getting swindled by crooks like Apostelos. It has not benefitted from Boyd losing money to Apostelos.

      Boyd also attempts to distinguish *Smith v. Waite*, 46 Ohio App. 2d 281, 350 N.E.2d 431 (10th Dist. 1975), but acknowledges that in *Wait*, "[t]he Court dismissed [plaintiff's] claim under Section 1707.43 because he was a trustee of the issuer, **not a purchaser of securities**" (Opp. at 6) (emphasis added)—exactly the point Kingdom Trust makes here. Boyd's attempt to draw the conclusion from the *Wait* decision that Boyd would only lack standing if she were pursuing a claim under Section 1707.43 on Apostelos' behalf misconstrues the court's holding. The *Wait* Court expressly held that the plaintiff lacked standing for "two basic reasons": (1) that the state (the defendant) was not a "person" as defined by the Ohio Securities Act; and (2) that, like Boyd here, "**[plaintiff] does not allege that he was the purchaser of any of the securities involved**." 46 Ohio App.2d at 284 (emphasis added). Nowhere in the opinion does the court mention, or even imply, that its holding had anything to do with the plaintiff's status as a trustee for the issuer. *See generally, id.*

---

[1] As is customary in the industry, Kingdom Trust receives fees—in accordance with its published fee schedule—for its custodial duties of administering the accounts of its accountholders, and not for making investments on behalf of its accountholders. (*See* Mot., Ex. B § 8.05(a) (PageID 159.))

5

Boyd also relies on *James v. Gerber Prods. Co.*, 483 F.2d 944 (6th Cir. 1973), as an example of a beneficiary having standing to bring a securities claim. But Boyd's argument conveniently leaves out two critical facts: (1) *James* involved an SEC Rule 10b-5 claim, not a Section 1707.43 claim under the Ohio Securities Act, and (2) unlike this case, the plaintiff in *James* asserted a fraud claim against the trustee (arguing that the trustee and Gerber conspired with respect to the security at issue). Rule 10b-5 covers fraud "*in connection with the purchase or sale* of any security," 17 C.F.R. § 240.10b-5(c). That is a much broader formulation than R.C. § 1707.43(A), which specifically affords a cause of action only to the "purchaser." The development of the "purchaser/seller" nexus discussed in the opinion is entirely a judicial construct interpreting the statutory language. Here, on the other hand, the Ohio statute itself specifically allows only the "purchaser" to bring an action. The case law cited by Kingdom Trust, which Boyd unsuccessfully attempts to distinguish, has interpreted Section 1707.43 according to its literal meaning. Moreover, unlike in *James,* Boyd's Complaint is devoid of any allegation that Kingdom Trust even knew of Apostelos' illicit plan, let alone conspired with Apostelos to sell the Apostelos Note, as Boyd admits in her Opposition Brief.[2]

Lastly, Boyd's argument that she would be "without an avenue of redress" absent standing to bring a claim under Section 1707.43 fails as well. (Opp. at 7) (citing *In re Nat'l Century*, 755 F. Supp. 2d at 865 (quoting *James*, 483 F.Supp. 2d at 949)). She is incorrect. Kingdom Trust does not argue Boyd has no avenue of redress for her injury; it argues only that she does not have standing under Section 1707.43 of the Ohio Securities Act. Boyd could have brought a myriad of alternative claims—for instance, fraud, misrepresentation, or other claims—against Apostelos (the actual wrongdoer), but she did not do so.

---

[2] "Ms. Boyd is certainly not asking for knowledge to be imputed to Kingdom Trust." (Opp. at 15.)

### B. Boyd Misrepresents Kingdom Trust's Argument (and Ohio Law) in Arguing That the Ohio Securities Act Does Not Provide a Blanket Exemption for Trust Companies.

The crux of Boyd's argument, although not explicitly stated, is that she would not have suffered harm *but for* Kingdom Trust's role as the custodian of her self-directed IRA. To that end, Boyd spends a significant amount of time arguing that the Ohio Securities Act does not provide a blanket exemption for trust companies. Kingdom Trust does not argue this point. Instead, Kingdom Trust cites to precedential case law that explains the level of "participation" or "aid" to a seller in the sale of an illegal security necessary to give rise to liability. Thus, the issue is not one of exemptions but, rather, of *thresholds*. As demonstrated in Kingdom Trust's Motion to Dismiss, Boyd's Complaint does not allege sufficient facts upon which this Court can find Kingdom Trust liable under R.C. § 1707.43.

Numerous Ohio decisions provide guidance with respect to what constitutes the threshold of "participation" or "aid" adequate to impose liability. In *Federated Management Company v. Coopers & Lybrand*, 137 Ohio App.3d 366, 738 N.E.2d 842 (10th Dist. 2000), a case Boyd relies on in her Opposition, the court expounded on these types of acts. There, the defendant was an underwriter who not only acted as the sellers' financial advisor, but also "conceived, organized, and directly participated in the underwriting of the [securities]." *Id.* at 393. Importantly, the court noted that the defendant's "mere involvement" in the sale did ***not*** provide a basis for Section 1707.43 liability. *Id.* Instead, it noted that the *specific activities* the defendant engaged in were sufficient to present an issue of fact as to whether those activities gave rise to R.C. § 1707.43 liability. *Id.*

Other Ohio courts have also helped delineate examples of threshold activities required to properly allege "aid" or "participation." *See Johnson v. Church*, *Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 541, 902 N.E.2d 1002, 1009 (Ohio Ct.App.2008)

(arranging and attending meetings between plaintiff and seller); *Boland v. Hammond*, 144 Ohio App.3d 89, 94, 759 N.E.2d 789, 793 (Ohio Ct.App.2001) (relaying information such as terms of illegal security and attending meetings between seller and plaintiff); *Perkowski v. Megas Corp.*, 55 Ohio App.3d 234, 235, 563 N.E.2d 378, 379 (Ohio Ct.App.1990) (promoting and endorsing the sale of an illegal security); *Gerlach v. Wergowski*, 65 Ohio App.3d 510, 514, 584 N.E.2d 1220, 1222 (Ohio Ct.App.1989) (participating in sales presentations for the illegal security). These cases—all of which Boyd acknowledges—fly directly in the face of Boyd's argument that R.C. § 1707.43 provides for the extremely broad, "but for" liability she alleges.

Kingdom Trust did not engage in anything remotely like the potentially culpable activities highlighted in these cases. Thus, the Complaint is devoid of any allegations that point to any aid or participation with the seller by Kingdom Trust. Indeed, the Complaint admits that Kingdom Trust acted at Boyd's behest and direction; she cannot now claim that Kingdom Trust's actions were on behalf of the seller or issuer of the securities. Specifically, and as the Complaint alleges, Kingdom Trust merely opened an IRA for Boyd at her request and required her to fill out standard paperwork in doing so. (Compl. ¶¶ 54-55.) Such acts are not related to the sale of any securities; they are not even related to the *purchase* of any securities. Rather, those allegations support only the conclusion that Kingdom Trust was the custodian of a self-directed IRA. As far as any connection to the transfer of the Apostelos Note, the Complaint only alleges that "Kingdom Trust, on behalf of Ms. Boyd's IRA account *purchased* an Unregistered Security … from Apostelos," (Compl. ¶ 56), and that Kingdom Trust required Apostelos to execute a standard Promissory Note Investment Representation Letter. (Compl. ¶ 57.) Aside from not crossing the "aid/participation" threshold, such actions, if anything, concerned the *purchase* of the security, not the *sale* of the security. Nowhere does the Complaint contain a factual

8

allegation that Kingdom Trust solicited Boyd to invest in the Apostelos Note, endorsed the Apostelos Note, marketed the Apostelos Note, relayed to Boyd any information about the Apostelos Note before she decided to invest, or brought her together with Apostelos to discuss the investment opportunity. Thus, Boyd's allegations, without more, fail to state a claim against Kingdom Trust.

In addition, the court in *Nat'l Century* noted that liability under R.C. § 1707.43 requires not only "an act of participation or assistance in the sale," but also "some form of remuneration, either direct or indirect." *In re Nat'l Century*, 755 F. Supp.2d at 884; R.C. §1707.431(B). Critically, Boyd acknowledges this requirement. (Opp. at 4 (quoting *In re Nat'l Century*, 755 F.Supp. at 884.)) Boyd's Complaint, however, does *not* allege that Kingdom Trust received such remuneration. In fact, the only allegation in the Complaint is that Kingdom Trust received remuneration for acting as custodian for Boyd's IRA. (Compl. ¶ 42.)[3] This distinction is significant because R.C. § 1707.43 relates to aiding and participating in the *sale* of illegal securities, not serving as custodian of a self-directed IRA. Therefore, Boyd's Complaint against Kingdom Trust should be dismissed on that basis alone.

Instead, Boyd hangs her hat on *Hardin v. Reliance Trust Co.*, No. 1:04 CV 02079, 1006 WL 2850455 (N.D. Ohio)—a case that was not decided on the merits of a Section 1707.43 claim. In *Hardin*, the court dismissed the plaintiffs' R.C. § 1707.43 claim because the statute of limitations barred recovery. *Id.* at *10. Although the court mentioned in *dicta* that "[defendant's] role in purchasing the [security] for [plaintiffs'] accounts is sufficient to form a

---

[3] The first time Boyd attempts to raise an argument that Kingdom Trust received remuneration for the sale itself is in her Opposition, when she states that "Kingdom Trust paid $400,000 for the security *and collected fees from Ms. Boyd related to the execution of the sale*," and then cites to Paragraph 56 of the Complaint. (Opp. at 2.) First, nowhere in the Complaint—Paragraph 56 or otherwise—does Boyd allege that Kingdom Trust received fees for the execution of the sale of a security. Second, the Custodial Agreement clearly states that Kingdom Trust would only receive fees—in accordance with a predetermined fee schedule—for "establishing and maintaining [the] IRA." (*See* Mot., Ex. B § 8.05(a) (PageID 159).) Thus, Boyd would have paid Kingdom Trust's usual fees regardless of where she invested the funds held in her account.

9

possible basis for liability under R.C. § 1707.43," and should have provided actual notice to plaintiffs for statute-of-limitations tolling purposes, this comment was not the basis for the court's holding. *Id.* Thus, while the *Hardin* Court acknowledged the possibility of a claim, it stopped short of making a finding that the claim was, in fact, supported by the law. The *Hardin* court's *dicta* goes against the weight of authority, as demonstrated in the case law discussed above, and cannot override the holdings of other courts directly on point on this issue.

Lastly, the plaintiffs in *Hardin* had alleged that the defendant conspired with the party who violated the Ohio Securities Act by *marketing* the sale to the plaintiffs (*id.* at *5), allegations not contained here. Thus, the *Hardin* defendant was alleged to have had a level of involvement in the sale that far surpassed the non-involvement Boyd alleges as to Kingdom Trust. Accordingly, *Hardin* is not instructive here.

    **C.**    **Boyd's Mere Reiteration of Conclusory Allegations Against Kingdom Trust Does Not Cure the Fact That She Failed to State a Claim Against Kingdom Trust.**

When it comes down to it, Boyd has not made any factual allegations that would give rise to liability for Kingdom Trust. Boyd, yet again mischaracterizing Kingdom Trust's position, argues that claims falling under the Ohio Securities Act, including those under R.C. § 1707.43, do not require a heightened pleadings standard. Kingdom Trust agrees, and did not argue otherwise. Rather, Kingdom Trust cited to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to make the point that, in this federal court, established case law requires *every* plaintiff to plead "*sufficient factual* matter … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* And here, none of Boyd's allegations meet that standard because they are mere conclusory allegations without any factual support.

10

As the Sixth Circuit has noted, "[i]n the aftermath of [the *Iqbal* and *Twombly*] decisions, a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  Boyd's strongest allegations do nothing more than that in making bare assertions.  For example, Boyd alleges that Apostelos, "on behalf of Defendants, routinely assisted [Boyd] with completing account applications and related documents." (Compl. ¶¶ 46, 55.) Besides characterizing Apostelos (not Kingdom Trust or Pensco) as the "aider," the allegation that Apostelos acted "on behalf of Defendants" is a bare conclusion, lacking sufficient (or any) factual content to support a claim that there was any relationship whatsoever between Kingdom Trust and Apostelos.  In addition, to the extent it alleges anything at all about Kingdom Trust, this conclusory allegation is contrary to all of the other allegations of the Complaint, which make clear that Kingdom Trust acted on behalf of Boyd to purchase the Apostelos Note.  And there are no facts alleged to support the conclusion that Apostelos's assistance to Boyd benefitted Kingdom Trust.

Boyd also asserts that "[t]he sale of the illegal securities to [her] could not have happened without Kingdom Trust's participation in and execution of the transaction." (Opp. at 9; Compl. ¶¶ 49, 80.)  Again, this is a mere legal conclusion, and does not suggest any participation or aid by Kingdom Trust to Apostelos in making the sale.  Under this reasoning, the State of Ohio, in *Smith v. Wait*, would have been liable because, but for the State's registration of the security, the illegal sale would not have occurred.  *Smith,* 46 Ohio App.2d at 284-85.  It is not possible to look at such allegations and determine that Boyd pleaded "sufficient factual matters" that could allow a court to draw an inference that Kingdom Trust "is liable for the misconduct

alleged," particularly in light of the way in which Ohio courts have interpreted "aid" or "participation" for the purposes of R.C. § 1707.43. *See Iqbal*, 556 U.S. at 678.

None of the remaining allegations amount to factual assertions to support the conclusion that Kingdom Trust somehow aided or participated in the sale of the Apostelos Note. Boyd, in her Opposition Brief, merely reiterates essentially every paragraph from her Complaint that contains the words "Kingdom Trust," as if doing so will lend more credibility to her theory.[4] Boyd refers back to her Complaint to assert that Kingdom Trust: knew Apostelos was operating in Ohio and that he was soliciting investors in Ohio (Opp. at 9; Compl. ¶ 17)[5]; opened an IRA for Boyd (Opp. at 9; Compl. ¶ 47); took title of Boyd's IRA as custodian (*id.*); executed the purchase of the Apostelos Note for Boyd (Opp. at 9; Compl. ¶¶ 17, 56); and required Boyd and Apostelos to fill out paperwork documenting the purchase (Opp. at 9; Compl. ¶¶ 50, 57.)[6] This all provides a good summary of the purchase transaction and the events leading up to it, but it fails to do the one critical thing: state a claim against Kingdom Trust upon which relief can be granted. None of these allegations provide even an implication that Kingdom Trust somehow "participated in or aided [Apostelos] in any way," let alone "in making [a] sale" of a security. O.R.C. § 1707.43(A).

Lastly, Boyd clearly alleges that Apostelos, not Kingdom Trust, orchestrated all the substantive acts related to the sale of his security. As she states in the Complaint, "*at Apostelos direction*, Ms. Boyd opened an account with Defendant Kingdom Trust." (Compl. ¶

---

[4] Boyd, in referring back to the Complaint, also dishonestly adds language that is not actually in the Complaint. For example, Boyd states in her Opposition that "Apostelos had to use the services of IRA custodians like Kingdom Trust that would allow the use of IRA funds for the purchase of illegal securities." (Opp. at 8, allegedly citing Compl. ¶¶ 39, 41.) Not only is that not what the Complaint states, but it is also untrue. Kingdom Trust does not allow accountholders to use IRA funds to invest in illegal securities and, in fact, Boyd expressly agreed that she would not direct Kingdom Trust to invest in illegal transactions. (Mot., Ex. B § 9.05, PageID 161.)

[5] Boyd specifically disclaims that she is "asking for knowledge [of Apostelos' scheme] to be imputed to Kingdom Trust." (Opp. p. 15)

[6] This string of "allegations" on Page 9 of the Opposition also contains the assertion that Kingdom Trust profited from the purchase of the Apostelos Note. As argued, *supra,* the Complaint lacks any such allegation.

12

54) (emphasis added). There are no allegations that Kingdom Trust had any involvement or influence in that decision or that Kingdom Trust conspired to assist in a scheme with anyone to deceive Boyd. In fact, Boyd specifically alleges that Apostelos is the party who perpetrated the fraud against her. And as for the investments themselves, "*Apostelos* would either have *the Plaintiffs request* the Defendants purchase Unregistered Securities using IRA assets or *Apostelos* would have *the Plaintiffs execute* powers of attorney giving him … the ability to request the Defendants purchase Unregistered Securities." (Compl. ¶ 48) (emphasis added).

In sum, Boyd's allegations do not state a claim against Kingdom Trust. Most of the allegations simply point out actions that Kingdom Trust engaged in that are unrelated to the sale of the Apostelos Note. Thus, Boyd is left with nothing other than "conclusory allegations that [Kingdom Trust] violated the law." *16630 Southfield Ltd. P'ship*, 727 F.3d at 504. And that is not enough to support a claim against Kingdom Trust.

### III.   CONCLUSION

As much as Boyd should be made whole again, Kingdom Trust was not the party responsible for her damages. It did not participate in or aid Apostelos in selling her an unregistered security that Apostelos used to perpetrate a Ponzi scheme. Kingdom Trust merely opened an account at Boyd's request and purchased the Apostelos Note at her direction. It did not take Boyd's money or profit from her making the investment. Therefore, even if Boyd had standing to bring a claim against Kingdom Trust under R.C. § 1707.43, which she does not, such a claim must fail. For the foregoing reasons, the Complaint should be dismissed without leave to amend.

*/s/ Robin D. Miller*
Robin D. Miller (0074375)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
Telephone: 513.698.5054
Facsimile:  513/698.5055
E-mail:    rmiller@ulmer.com

Frances Floriano Goins (0018631)
ULMER & BERNE LLP
Skylight Office Tower
1660 West Second Street, Suite 1100
Cleveland, Ohio 44113-1448
Telephone: 216.583.7000
Facsimile:  216.583.7001
E-mail:    fgoins@ulmer.com

*Attorneys for Defendant The Kingdom Trust Company*

14

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on May 6, 2016, a true and accurate copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Robin D. Miller*
One of the Attorneys for Defendant The Kingdom Trust Company