**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

CYNTHIA BOYD, et al.,

          Plaintiffs,

v.                                              **Case No. 3:16-CV-009**
                                              **Judge Thomas M. Rose**

THE KINGDOM TRUST COMPANY, *et al*.,

          Defendants.

---

**ENTRY AND ORDER GRANTING PENSCO'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE OHIO SECURITIES ACT, O.R.C. § 1707.01** *et seq*. (DOC. 10)

---

      Plaintiffs Cynthia H. Boyd and Thomas E. Flanders, individually and on behalf of all others similarly situated filed a lawsuit against The Kingdom Trust Company, PENSCO Trust Company, and John Doe, 1-25 (collectively "Defendants") for violation of the Ohio Securities Act, O.R.C.§ 1707.01 *et seq.* (Doc. 1). Pending before the Court is Defendant PENSCO's Motion to Dismiss the Class Action Complaint for Violations of the Ohio Securities Act, O.R.C.§ 1707.01 *et seq.* (Doc. 10). Therein the Defendant PENSCO requests the Court dismiss Plaintiffs' asserted claim against it for violation of Ohio Securities Act for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have not presented sufficient allegations to support their claims for a violation of the

1

Ohio Securities Act against PENSCO, the Court will grant the Motion to Dismiss the Class Action Complaint for Violations of the Ohio Securities Act.

**I.  Background**

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations as true.  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d, 478, 488 (2009).  The complaint includes the following factual allegations.

On or about the time of January 2010 through October 2014, William Apostelos and his associates allegedly perpetrated a fraudulent scheme against investors, which Plaintiffs assert is what is otherwise known as a Ponzi scheme.  (Doc. 1, ¶ 32).  During that time period, Apostelos allegedly raised $66.7 million from at least 350 investors.  (*Id.*).  In purporting his scheme, Apostelos allegedly did not use investor funds for the purpose he described when soliciting new investors or when trying to retain investors.  (*Id.* at ¶ 33).  Apostelos allegedly did not maintain separate "funds" for different investment services, rather nearly all of the investor funds generated from the sales of Unregistered Securities were allegedly funneled into bank accounts, often within hours or days of being initially deposited.  (*Id.*)  In turn, the majority of the $66.7 million allegedly raised from investors through the sale of Unregistered Securities was allegedly used to pay approximately $52.8 million to investors and at least $6.3 million to promoters.  (*Id.* at ¶ 34).  Plaintiffs allege Apostelos did not use legitimate business revenue or investment returns to fund the approximately $52.8 million paid out to investors between January 2010 and October 2014, rather he used investor funds to pay purported returns and principal to the other investors.  (*Id.* at ¶ 35).  On October 15, 2014, a group of investors filed a petition for

involuntary bankruptcy against Apostelos under Chapter 7; the bankruptcy action is pending. (*Id.* at ¶ 36). On October 29, 2015, Apostelos and his wife were indicted on twenty-seven federal charges, including conspiracy to defraud investors through the above-referenced Ponzi scheme. (*Id.* at ¶ 37).

In the case at bar, Plaintiffs allege Defendant PENSCO Trust Company, The Kingdom Trust Company, and/or John Does, 1-25 aided or participated in the sale of Unregistered Securities, and thereby assisted Apostelos in the furtherance of the alleged Ponzi scheme. (*Id.* at ¶ 78). Specifically, Apostelos had Plaintiff, Tom Flanders, transfer his individual retirement account (hereinafter "IRA") to Defendant PENSCO, a self-directed investment retirement account custodian (hereinafter "SDIRA"). (*Id.* at ¶ 4). Apostelos and/or his associates, on behalf of PENSCO, assisted Flanders in executing the documents necessary to transfer custodial responsibility for his IRA to PENSCO. (*Id.* at ¶ 61). On February 25, 2011, PENSCO, on behalf of Flanders, allegedly bought illegal securities from Apostelos, paying $497,000 for the securities and collecting fees from Flanders relating to the execution of the sale. (*Id.* at ¶¶ 62, 42). Plaintiffs allege the culmination of the sale of securities with Flanders' IRA assets could not have occurred without PENSCO's participation and execution of the sale. (*Id.* at ¶ 49). Ultimately, Plaintiffs allege that, without PENSCO's assistance with and participation in the sale of illegal securities, Apostelos would not have been able to complete the sale of securities to Plaintiff. (*Id.* at ¶ 49).

Flanders, personally and on behalf of those similarly situated who had PENSCO accounts, filed this action seeking to hold PENSCO liable for its alleged role in the sale of illegal securities. (*Id.* at ¶ 65).

## II.     Failure to State a Claim – 12(b)(6)

### A.  Legal Standard

To conclude that a plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009).  Though, a court need not accept as true the legal assertions of the plaintiff. *Id.*  Instead, in order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 545, 555 (2007)).  In addition to the complaint, a court "must consider . . . other sources . . . in particular, documents incorporated into the complaint by reference…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308, 322-23 (2007).

### B.  Analysis

A claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citation omitted).  Still, a court is not required to accept "legal conclusions" or "conclusory statements" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, a complaint "should be dismissed for failure to state a claim only where 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'" *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Plaintiffs' claim in this case is brought pursuant to Ohio law and issues interpreted under Ohio law. (Doc. 1, ¶ 72–85). In reviewing an action or issue under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Pullins v. Klimley,* S.D.Ohio No. 3:05-CV-082, 2008 U.S. Dist. LEXIS 3467, at *21-22 (Jan. 7, 2008) (citing *Northland Ins. Co. v. Guardsman Prods. Inc.,* 141 F. 3d 612, 617 (6th Cir. 1998). This court is required to apply the substantive law of Ohio, "in accordance with the then-controlling decision of the highest court of the state." *Pullins,* 2008 U.S. Dist. LEXIS at *22 (quoting *Imperial Hotels Corp. v. Dore,* 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.,* 145 F.3d 804, 808 (6th Cir. 1998) (internal quotations omitted)).

Chapter 1707 of the Ohio Revised Code governs the sale and purchase of securities in Ohio, wherein its purpose is "to prevent the fraudulent exploitation of the investing public through the sale of the securities." *In re Columbus Skyline Securities, Inc.* 660 N.E.2d 427, 429 (Ohio 1996). The Ohio Securities Act functions in three capacities, it requires securities to be registered, it requires sales persons and dealers be licensed, and it proscribes fraudulent conduct. *See* Ohio Rev. Code 1707.01 *et seq.* Courts have liberally construed the Act to effectuate its remedial purpose. *In re Nat'l Century Fin. Enters. Inc.,* 755 F. Supp.2d 857, 873 (2010). Pursuant to Ohio Rev. Code § 1707.43, "every person that has participated or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the

purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision." Ohio Rev. Code § 1707.43(a).

Here, Plaintiffs allege that but for PENSCO's services, it would not have been possible for Apostelos to sell the Securities to Plaintiffs. (Doc. 1, ¶ 49). Plaintiffs further contend that by way of these actions, PENSCO is liable under the Ohio Securities Act because it "participated or aided" Apostelos in making the sale. Ohio courts, however, have held § 1707.43 does not extend liability to financial institutions engaged in "normal commercial banking activities." *Wells Fargo Bank v. Smith,* No. LEXIS 751 at *29 (Ohio Ct. App. Mar. 11, 2013). In *Wells Fargo*, a mortgage firm and its employees participated in closing a mortgage. *Id.* at *3. Thereafter, the mortgagor used the proceeds to buy fraudulent, unregistered securities, which were part of a multi-million dollar Ponzi scheme. *Id.* at *2. The mortgage company's liability as to the sale of unregistered securities was evaluated under Ohio Rev. Code § 1707.43. *Id.* at *28. The court held in favor of the mortgage company, and stated it did not go beyond "normal banking procedures" and its actions in processing the mortgage did not amount to "participating or aiding" an illegal sale of securities. *Id.* at *30-31.

Conversely, where a bank directly participates in the underwriting of unregistered securities, it is considered to have aided the seller in making the sales, in violation of Ohio Rev. Code § 1707.43. *Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 862 (10th Dist. 2000). In *Federated Management*, plaintiffs claimed the underwriter was jointly and severally liable for the sale of illegal securities because it "participated in or aided the seller" in violation of § 1707.43. *Id.* Plaintiffs further alleged the underwriter acted as the sellers' financial advisor

and that he "conceived, organized and directly participated in the underwriting of the [illegal securities]." *Id.* The court held the underwriters conduct went far beyond "normal banking activities," in turn creating liability under § 1707.43. *Id.*

Here, Plaintiffs have failed to make an allegation that PENSCO acted outside the scope of routine banking activities. Specifically, Plaintiffs only allege PENSCO "took title, custody, and possession, of all assets in Plaintiffs' IRA accounts[,]" executed transactions on behalf of Plaintiffs, and required Plaintiffs to provide certain information to open accounts—all of which are traditional duties of a bank. Because Plaintiffs have failed to make any allegations outside of routine banking activities, PENSCO's mere involvement in the sale of illegal securities does not amount to liability under § 1707.43.

In viewing the complaint in the light most favorable to Plaintiffs, and by taking all well-pleaded factual allegations as true, the complaint does not contain either direct or inferential allegations that could support an inference that PENSCO's conduct went outside the scope of "normal banking activities." Instead, the complaint merely alleges that PENSCO was involved in transactions with Apostelos of unregistered securities. Indeed, Plaintiffs fail to allege communication of any sort between PENSCO and Apostelos. This mere involvement is insufficient to extend liability to PENSCO. Therefore, based on the foregoing, PENSCO's 12(b)(6) motion is granted.

### III. Conclusion

Because Plaintiffs' claim does not allege PENSCO participated in anything more than routine banking activities, it therefore does not contain sufficient factual allegations that state a claim for relief that is plausible on its face. PENSCO's Motion to Dismiss the Class Action

Complaint for Violations of the Ohio Securities Act, O.R.C. § 1707.01 *et seq.* for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is **GRANTED**.[1]

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 1, 2016.

s/Thomas M. Rose

───────────────────────────────
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Samantha M. D'Anna in drafting this opinion.